```
                    UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                           WESTERN DIVISION
```

DEBRA D. EMBRY                                              PLAINTIFF

VERSUS                            CIVIL ACTION NO. 5:08cv191-DCB-JMR

INTEGRITY INTERNATIONAL SECURITY
SERVICES, INC.                                              DEFENDANT

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment [docket entry no. 58] and Motion to Strike Plaintiff's Unsupported Allegations and Supplement to Plaintiff's Response to Defendant's Motion for Summary Judgment, Exhibits and Supporting Memorandum [docket entry no. 69].  Having carefully considered the motions, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND AND PROCEDURAL HISTORY

The plaintiff herein is Debra Embry ("Embry" or "Plaintiff"), who is a former employee of the sole defendant, Integrity International Security Services ("Integrity" or "Defendant"). Integrity is a corporation that is in the business of providing security services, such as employment of security guards, performing patrols, undertaking investigations, gathering

intelligence and completing background checks, in the United States and abroad through federal government contracts. Pertinent to this case are two of these federal government contracts. Integrity and the United States Army Corps of Engineers (hereinafter "the Corps") entered into two contracts for Integrity to provide security services to the Corps at its location in Vicksburg, Mississippi. The first of these contracts was for services to be provided from 2000 to 2005. The second contract was for services to be provided from 2005 to present. Pursuant to the contract, Integrity was to provide the Corps with various services including performing background checks for government employees and contractors and investigating workers compensation claims, fraud allegations, and general employee issues. The instant case was brought against Integrity for its alleged unlawful retaliation against Embry resulting from Embry's romantic involvement with Mark Faith, a former employee of Integrity.

According to her deposition, the Plaintiff began working as a security guard with Southwestern Security Services ("Southwestern Security") in June 2001. She was hired by Mark Faith ("Faith"), who at that time was the project manager of Southwestern Security. During her employment with Southwestern Security, Embry developed a friendly relationship with Faith which began when Embry approached Faith to consult him about some personal issues. Specifically, Embry approached Faith to discuss her marital

2

problems involving her then-husband, John Thomas. Although Embry remained married to John Thomas, her friendship with Faith, who was also married, eventually became sexual sometime around August 2002. Later, Embry and Faith began occasionally meeting at local motels. Eventually, under the guise that Embry was cleaning Faith's house as a side job, Embry and Faith began to meet at Faith's house. Throughout this relationship, Faith provided money, jewelry and other gifts to Embry.

In March 2003, the Corps' contract for security services was transferred from Southwestern Security to Paragon Security ("Paragon"). Embry was hired by Paragon to perform the same security services that she had performed with Southwestern Security. Mark Faith left Southwestern Security and became the Chief of Law Enforcement for the Corps in Vicksburg, Mississippi, where part of his job was to oversee all of the Corps' contracts in Vicksburg, including the contract between the Corps and Integrity. Embry and Faith continued their sexual relationship during this time.

Sometime around September 2003, Embry went to work for Integrity as a general clerk. According to Embry, Faith, through his authority over the Integrity contract, created the position specifically for her. Faith testified in his deposition that, due to changes within the Corps that mandated more staff, he added a position and, being of the opinion that Embry was qualified to

3

perform the requisite duties, he recommended her for the position. Embry never disclosed her relationship with Faith to anyone at Integrity.

The undisputed facts show that Embry ended her romantic relationship with Faith sometime around January 2006. Thereafter, she began dating Richard Embry, who later became her husband. Richard Embry was an employee with the Corps' Mat Sinking Unit ("MSU"), which is responsible for operations aimed at preventing erosion of the banks of the Mississippi River. During the season in which the MSU operates, the MSU employees live onboard quarterboats which travel up and down the Mississippi River. The Corps is aware of illegal drug and alcohol abuse which occurs onboard the quarterboats. Among his co-workers, Richard Embry was suspected of being a drug user. At one point, prior to the time period involved in this case, the Corps conducted an investigation into the allegations that Richard Embry was using drugs in the workplace.

One part of the plaintiff's job was to go onboard the quarterboats, including the one on which her boyfriend Richard Embry was stationed, to make identification cards. The plaintiff was scheduled to board the boat on November 14, 2006, the date that a drug search of Richard Embry's boat was scheduled to take place. For reasons which are unclear, Faith instructed Embry to reschedule this trip until after the drug search.

On November 14, 2006, the Corps, along with local law enforcement, conducted a search of the boat on which Richard Embry was working. Although he was in charge of organizing the search, the summary judgment evidence before the Courts reveals that Faith did not initiate the search, nor was the search aimed specifically at Richard Embry.

The search uncovered only two small items of contraband, neither of which belonged to Richard Embry. The night before the search, Debra Embry phoned the boat to speak to Richard Embry. Although the plaintiff denies that she told Richard Embry anything about the impending search, some employees at the Corps suspected that the plaintiff had warned Richard Embry about the search.

Integrity, upon the suggestion of Faith, began an investigation to determine whether Embry had in fact disclosed the search to Richard Embry. As part of that investigation, the plaintiff was asked to give a written statement regarding the events. In her statement, the plaintiff made her first allegation that Faith was sexually harassing her. Specifically, Embry claimed that the investigation into her alleged disclosure of the search was being initiated by Faith in retaliation for Embry having ended their romantic relationship.

Once Embry made her report of sexual harassment, she was placed on administrative leave so that Integrity could investigate the claim. During this time, Mark Faith resigned from the Corps.

Embry's employment with Integrity was terminated on December 26, 2006.

On April 8, 2008, in the Circuit Court of Warren County, Mississippi, the plaintiff instituted this action wherein she alleges that the defendant is liable for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964. Embry further claims that the defendant is liable for tortious breach of contract. The case was removed to this Court on May 5, 2008, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of both diversity and federal question jurisdiction.

On February 23, 2009, the defendant filed its Motion for Summary Judgment. After the plaintiff responded to said motion, the defendant filed its Motion to Strike Plaintiff's Unsupported Allegations and Supplement to Plaintiff's Response to Defendant's Motion for Summary Judgment, Exhibits and Supporting Memorandum. These motions now are before the Court.

## II. ANALYSIS

*A. Summary Judgment Standard*

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

6

judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine

---

[1] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

*B. Motion to Strike*

As a preliminary matter, the Court addresses Integrity's motion to strike the plaintiff's responses to its motion for summary judgment. Integrity electronically filed its motion for summary judgment on February 23, 2009. Embry filed her first response in opposition to the motion on Monday, March 9, 2009. On March 12, 2009, Embry electronically filed a revised memorandum, a supplement to her response, and several accompanying exhibits. Integrity now seeks to strike the allegations contained in Embry's first response to Integrity's motion on the basis that they contain incomplete citations to summary judgment evidence. Additionally, Integrity asks the Court to strike as untimely (1) Embry's revised memorandum, which contained citations that were previously incomplete; (2) the Exhibits accompanying the revised memorandum; (3) Embry's supplemental response to Integrity's motion for summary judgment; and (4) the Exhibits accompanying the supplemental response.

Pursuant to Local Rule 7.2(D), when a party files a motion, the respondent shall have ten (10) days after service of the

movant's memorandum to file a response. Additionally, Local Rule 7.2(I) entitles a party to an additional three days for documents that are served by any permissible means other than hand-delivery. Accordingly, the deadline for Embry to electronically serve her response on Integrity was Thursday, March 12, 2009. Since Embry's revised memorandum, supplemental response, and all exhibits were electronically filed by this deadline, they are timely and will be considered for purposes of deciding Integrity's motion for summary judgment. Accordingly, Integrity's motion to strike these documents on the basis that they are untimely is denied. Furthermore, since Embry's revised memorandum contains completed citations to documentary evidence, Integrity's motion to strike is denied.

*C. Embry's Retaliation Claim*

The Court now turns to the merits of Embry's retaliation claim. To establish a prima facie case of retaliation, the plaintiff must show "(1) that she engaged in activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). If the plaintiff can establish a prima facie case of retaliation, the burden of producing some nondiscriminatory reason for the adverse employment action falls upon the defendant. The plaintiff then assumes the

burden of showing that the reasons given were a mere pretext for retaliation. Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992).

In deciding whether the plaintiff has proven her prima facie case of retaliation, the Court first examines whether Embry has satisfied the first element--engagement in protected activity. "An employee has engaged in a protected activity if he or she has ... 'opposed any practice made an unlawful employment practice by this subchapter." Byers, 209 F.3d at 427-28 (quoting 42 U.S.C. § 2000e-3(a)) (emphasis in original). A plaintiff proceeding under this subsection, known as the "opposition clause"[2], need not prove that her employer's actions were indeed unlawful, but only that she had "'a reasonabl[e] belief that the employer was engaged in unlawful employment practices.'" Id. at 428 (quoting Payne v. McLemore's Wholesale and Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981), cert. denied, 455 U.S. 1000 (1982)). Embry filed a written complaint with her supervisor, Bryan Kelly, and Integrity's Project Manager, Richard Maxwell, on November 21, 2006, wherein she alleged that Faith had been sexually harassing her. Specifically, Embry

---

[2] A plaintiff has also engaged in protected activity if she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Byers, 209 F.3d at 428. This clause is known as the "participation clause". Id. The "participation clause" is inapplicable in this case because Embry did not file her claim with the Equal Employment Opportunity Commission until after she was terminated. See id.

10

claimed that she believed that Faith had instigated the investigation of her involvement in the drug search because he was angry that she was seeing Richard Embry.

Integrity's motion and supporting memorandum focus in large part on the consensual nature of Embry's relationship with Faith. While the record suggests that the pair engaged in a consensual relationship for a substantial period of time, Embry claims that she ended the relationship with Faith sometime around January 2006, that she took steps to avoid encounters with Faith, and that she had started dating someone else, Richard Embry. This testimony is corroborated by Joe Johnson, who testified at his deposition that Embry told him that she had ended the relationship with Faith and that he witnessed Embry fake an illness to excuse herself from a dinner party where Faith was present. Furthermore, Faith himself admits that, at the time Embry was being investigated for the search incident, Faith and Embry had not been in a sexual relationship "for a very long time." (Faith Depo. at p. 183).

Integrity's position that the plaintiff's retaliation claim fails because she and Faith once were involved in a consensual sexual relationship is without merit. See Green v. Adm'rs of the Tulane Educational Fund, 284 F.3d 642, 756 (5th Cir. 2002), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2412-13, 165 L.Ed.2d 345 (2006). The question, as the Court noted previously, is whether

11

the plaintiff reasonably believed that she was reporting unlawful conduct. Byers, 209 F.3d at 428. In this case, the evidence shows that Embry believed that Integrity's investigation of her was based on unlawful retaliation by Faith because of their past relationship. Embry's report of this belief to her supervisors, which led to an investigation of Mark Faith, qualifies as protected activity under the opposition clause. Accordingly, the Court finds that Embry has produced sufficient evidence to survive summary judgment on the first element of her retaliation claim.

The Court also finds that Embry has established the second element of retaliation--adverse employment action. After Embry reported the alleged sexual harassment to Bryan Kelly and Richard Maxwell, her employment with Integrity was terminated on December 26, 2006. Evidence of this termination satisfies Embry's duty to show that she suffered an adverse employment action.

Since the Court concludes that Embry has provided sufficient evidence that she engaged in protected activity and that she suffered adverse employment action, the focus now shifts to whether Embry has shown that the two were causally related. Byers, 209 F.3d at 427. The standard for establishing a causal link between the protected activity and the adverse employment action is "much less stringent" than the standard applicable to the ultimate determination of whether an employer has engaged in unlawful retaliation. Long v. Eastfield College, 88 F.3d 300, 305 n. 4 (5th

Cir. 1996). The ultimate issue of retaliation requires the plaintiff to prove that the adverse employment action would not have occurred "but for" the protected activity. Id. Quite differently, to establish the causal link element of her prima facie case, the plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision." Id.

This case presents an unusual situation because Faith was neither Embry's direct supervisor nor did he possess the final authority regarding employment decisions related to Embry. Indeed, Faith was not even an employee of Integrity; he was employed by the Army Corps of Engineers. The Court must therefore decide whether the plaintiff has provided sufficient evidence of a causal connection between her report of alleged sexual harassment by Faith, a non-employee of Integrity, and her termination.

In deciding whether Embry has met the causal link requirement, this Court is guided by the Fifth Circuit Court of Appeals' decision in Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996). Long involved two plaintiffs' claims of unlawful retaliation. Id. at 306. The former employees, who had both lodged discrimination and harassment complaints against their supervisors, were terminated, not by the supervisors against whom they had lodged the complaints, but by the President of the college, who was acting upon the recommendation of the two supervisors. Id. The Court

13

concluded that the plaintiffs had shown a causal link between their complaints and their supervisors' recommendations that they be terminated. Id. However, the Court next examined whether the President's actual decision to terminate was sufficiently independent of the supervisors' recommendations to sever the causal link between the plaintiffs' protected activity and their terminations. Id. Ultimately, the Court held that a causal link would exist if the decision to terminate was merely a rubber stamp on the recommendation of the supervisors. Id. at 307-08. But, if the decision to terminate was based on an independent investigation, the causal link would be broken. Id. The Long court found that summary judgment as to the causation issue was not proper. Id.

Long is analogous to the instant case. In Long, the Court determined that summary judgment was inappropriate because there were unresolved factual issues related to whether the plaintiffs' terminations were based in part on their protected activity. Similar factual issues exist here. The ultimate decision to terminate Embry was made by Dr. Roberto Rivera ("Dr. Rivera"), the owner of Integrity. The termination, according to a letter written to Embry by Dr. Rivera, was based on Dr. Rivera's investigation into Embry's long-term sexual misconduct in violation of applicable

Corps regulations.[3]  Dr. Rivera concluded that Embry's participation in this misconduct, as well as her failure to disclose the improper relationship, demonstrated her unsuitability for the job.  These facts suggest that Dr. Rivera undertook an independent investigation and made the decision to terminate without any influence by Mark Faith.  On the other hand, even though Faith had resigned by the time Embry ultimately was fired, the record indicates that Faith, at least at the time the investigation began, possessed substantial control over employment-related decisions at Integrity.  This authority came by way of his control over the contract between Integrity and the Corps.  Furthermore, there are fact issues regarding whether Dr. Rivera would have fired Embry had she not reported her suspicions that Faith was harassing her based on their prior relationship.  The rumors of Embry's relationship with Faith were widespread among the employees at Integrity and the Corps, yet no investigation had ever taken place before Embry's report.  Additionally, Dr. Rivera's

---

[3] In an affidavit, Dr. Rivera reviewed the Corps regulations that Embry allegedly violated.  Those regulations require Integrity employees to be "individuals of unquestionable integrity."  Integrity employees must also meet the requirements of the Individual Reliability Program (IRP) as established by Army Regulation (AR) 190-56, Chapter 3.  The program disqualifies from employment any individual who engages in "[a]cts of sexual misconduct or perversion indicative of moral turpitude, poor judgment, and lack of regard for the laws of society."  AR 380-67.  One act constituting sexual misconduct that may disqualify an employee includes "[a]dultery that is recent, frequent, and likely to continue and has an adverse effect on good order or discipline within the workplace."  AR 380-67.

15

reliance on Embry's adulterous relationship with Faith as the reason for her termination is an issue which cannot be resolved at the summary judgment stage. The AR definition of adultery as sexual misconduct includes a finding that the adultery is "recent, frequent, and likely to continue and has an adverse effect on good order or discipline within the workplace." AR 380-67. The Embry-Faith relationship does not clearly meet this definition. It is undisputed that Embry ended the relationship with Faith in early 2006, months before the current situation arose. Additionally, a letter written by Brian Kelly, Embry's supervisor, indicates that, despite the situation with Faith, Embry had remained a stellar employee. Kelly gave the highest recommendation for Embry's continued employment with Integrity. While these facts may not prove that Embry's protected activity--reporting sexual harassment--was the "but for" cause of her termination as required for her to ultimately prove unlawful retaliation, she has provided enough evidence, for purposes of surviving summary judgment, to create a factual issue as to whether there was a causal link between her report and her termination.

Where the plaintiff has met her burden with regard to proving her prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for her termination. Long, 88 F.3d at 308. Integrity has provided evidence of such a reason. Specifically, Integrity has shown that

16

its contract with the Corps is controlled by certain Army regulations that prohibit contract employees from engaging in certain types of sexual misconduct. According to Integrity, Embry's relationship with Faith was in violation of these regulations such that her termination was mandated under Integrity's contract with the Corps. This evidence, if believed by a trier of fact, would satisfy Integrity's burden of articulating a legitimate, non-retaliatory reason for Embry's discharge. See id. (noting that the employer's reasons for termination, if believed, "would permit the trier of fact to conclude that the terminations were non-retaliatory.").

Finally, since Integrity has satisfied its burden for the purposes of summary judgment, the focus shifts back to whether Embry has shown a "'conflict in substantial evidence"' as to whether she would have been terminated in the absence of her report of sexual harassment. Id. (quoting Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (citations omitted)). The question is "whether reasonable and fair-minded persons could conclude from the summary judgment evidence that [Integrity] would not have terminated [Embry] 'but for' [her] activities protected by Title VII." Id.

Despite Integrity's position that its reason for firing Embry was based on her sexual misconduct with Faith, the evidence suggests that this misconduct only became an issue after Embry

17

reported Faith's alleged harassment. As the Court has already articulated, the evidence shows that employees of both Integrity and the Corps were well aware, or at least highly suspicious, of an ongoing relationship between Embry and Faith. Yet, at no time did Integrity investigate the situation to see if Embry was in violation of the Corps regulations. Viewing this evidence in the light most favorable to Embry, the Court finds that a reasonable jury could conclude that the reasons offered by Integrity for Embry's termination were merely pretextual. Long, 88 F.3d at 309-09. As such, the plaintiff has provided sufficient evidence to survive summary judgment on her retaliation claim.

*D. Embry's Claim of Tortious Breach of Contract*

Integrity also moves for summary judgment on Embry's claim of tortious breach of contract. Specifically, Integrity argues that Embry's claim must fail because Embry was an at-will employee. Embry counter-argues that an implied contract was created by (1) Integrity's contract with the Corps and (2) Integrity's employee handbook. The Court considers these arguments in turn.

First, Embry claims that she had an implied contract for employment with Integrity that was based on Integrity's contract with the Corps. In Embry's affidavit, she states, "It was my understanding that I was employed for a period of time under the governmental contract with Integrity International Security Services, Inc. which was renewed on a yearly basis after a certain

18

period of time, which I believed to be three years. As long as Integrity's contract was rehired, I would be rehired under the Contract." Embry Affidavit at ¶ 7. Despite Embry's position, she has provided no evidence that her "belief" was based on any agreement, either express or implied, between Integrity and her. Additionally, the plaintiff has not provided any legal support, nor has the Court found any, for her position that a contract between Integrity and the Corps automatically creates an implied contract between Integrity and its employees.

Second, Embry argues that Integrity's employee handbook created an implied contract of employment. In support of her claim, Embry cites <u>Bobbitt v. The Orchard, Ltd.</u>, 603 So. 2d 356 (Miss. 1992). The plaintiff's reliance on <u>Bobbitt</u> is misplaced. The <u>Bobbitt</u> court held as follows:

> [W]hen an employer publishes and disseminates to its employees a manual setting forth the proceedings which will be followed in event of an employee's infraction of rules, and there is nothing in the employment contract to the contrary, then the employer will be required to follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual.

<u>Id</u>. at 357. This holding acknowledges that an employee handbook may vest an at-will employee with certain rights. However, it does not necessarily mean that the existence of an employee handbook automatically transforms an at-will employment into a contractual relationship. The evidence shows that Embry received an employee

19

handbook.  However, Embry has not put forth any evidence that said handbook expressly or impliedly vests her with a right to contractual employment.  Thus, the Court cannot say that the plaintiff has shown a prima facie case of tortious breach of contract.  The defendant's motion for summary judgment on this claim, therefore, is granted.

## IV. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [**docket entry no. 58**] is **GRANTED IN PART AND DENIED IN PART**.  Insofar as it seeks summary judgment on the plaintiff's claim for tortious breach of contract, the defendant's motion is granted.  Insofar as it seeks summary judgment on the plaintiff's claim for unlawful retaliation, the defendant's motion is denied.

**IT IS FURTHER ORDERED** that the defendant's Motion to Strike Plaintiff's Unsupported Allegations and Supplement to Plaintiff's Response to Defendant's Motion for Summary Judgment, Exhibits and Supporting Memorandum [docket entry no. 69] is **DENIED**.

**SO ORDERED**, this the 12th day of May 2009.

                                           s/ David Bramlette

                                           **UNITED STATES DISTRICT JUDGE**